The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENAN DEON PEEPLES,<br><br>Defendant. | No. CR24-70 KKE<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

The defendant, Kenan Deon Peeples, twice possessed a firearm despite being prohibited from doing so. The first time, he intentionally shot a friend. The second time, he took the gun to a medical clinic where his girlfriend had an appointment and sent threatening text messages to her while she was there. Peeples also has a significant history of violence. Considering the totality of this conduct, the government recommends that this Court sentence the defendant to 87 months in prison.

## I. PROCEDURAL HISTORY

On January 19, 2024, the government filed a Complaint alleging that Peeples had unlawfully possessed a firearm on February 10, 2023, and unlawfully possessed ammunition on October 26, 2023. Dkt. 1. Peeples was in custody at the King County Jail at the time the Complaint was filed; he was facing felony assault and unlawful possession of a firearm charges for the February 10, 2023, incident, and harassment and unlawful possession of a firearm charges for the October 26, 2023.

*United States v. Peeples*, CR24-70 KKE
Government's Sentencing Memorandum - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In April 2024, the parties worked out a global resolution of the charges. As part of that, the King County Prosecuting Attorney's Office agreed to release Peeples so that he could brought into federal custody; it then immediately obtained as arrest warrant so that Peeples would go back into state custody if he were released federally. The purpose of transferring Peeples in this way instead of having him first plead guilty in King County Superior Court and then having the government bring him into federal custody via a writ, was so that Peeples's primary custody would be federal and he would serve most of his time in federal custody instead of state custody, as he requested.

Once he made his Initial Appearance, Peeples entered pleas of guilty to both counts of an Information: Count 1: *Unlawful Possession of a Firearm*, in violation of 18 U.S.C. § 922(g)(1), and Count 2: *Unlawful Possession of Ammunition*, in violation of the same statue. Dkt. 8, 12, 14. In the Plea Agreement, the government agreed to recommend that this Court impose a sentence of no more than the low end of the guidelines—here, 87 months—and to recommend that it run concurrently with any time imposed on his King County charges. Dkt. 14. The parties anticipate that the King County Prosecuting Attorney's Office will then obtain a writ to take Peeples back into state custody, where he will enter a plea of guilty to Attempted Assault.

Sentencing is scheduled for July 26, 2024, at 11:00 a.m., before this Court.

## II. FACTUAL SUMMARY[1]

### A. February 10, 2023, Conduct

In the early morning hours of February 10, 2023, Peeples and his "brother"[2] met on the street outside of Peeples's residence near East Denny Way and Boylston Avenue East, Seattle, Washington. For reasons that remain unclear, Peeples aimed a firearm at his brother and pulled the trigger at least twice, hitting the brother in the leg. Peeples fled.

---

[1] This summary of the facts has been drawn from the Plea Agreement, Dkt. 14, and the Presentence Investigation Report, as well as certain investigatory materials.

[2] The "brother" and Peeples are not related, but they have a half-brother in common.

*United States v. Peeples*, CR24-70 KKE
Government's Sentencing Memorandum - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Seattle Police Department officers quickly responded. They found the brother lying in the street. His pants were covered in blood and he had a bullet hole in his right knee. The brother/victim was yelling "I don't know why he shot me, why did he do this?" The victim identified Peeples by name and description.

Officers conducted an area check and located Peeples not far away. He was holding a black ski mask. He told officers that he had just left his home, which was at the same intersection where the victim was found by SPD. He said he was going for a walk. It was slightly after 2:00 a.m.

Additionally, K9 officers arrived on scene and conducted a track to look for any firearms. The K9 led the officers down an alley and to a planter box, where the dog began grabbing sprinkler hose and gardening fabric in its teeth. At that location, officers found two firearms, as depicted below.




The firearms were recovered about two blocks southwest of where the victim was found and about two blocks north of where Peeples was stopped by SPD officers. The two firearms were a Glock 23, .40 caliber pistol, and a Glock 17, 9mm caliber pistol with an obliterated serial number. The latter firearm had a Glock Switch/Autosear attached, which converts the firearm to operate as a fully automatic weapon. When officers

*United States v. Peeples*, CR24-70 KKE
Government's Sentencing Memorandum - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

recovered this firearm, a fired casing was found lodged in the chamber, preventing the slide from closing.

Officers located two 9mm spent shell casings near where the victim was shot. There was a trail of blood from the shell casings to the victim.

B.     October 26, 2023, Conduct

In the evening of October 26, 2023, Peeples's girlfriend and her friend were at a Planned Parenthood clinic in Seattle. While one of them was being treated, the other read aloud text messages that Peeples was sending the girlfriend. They included messages such as "I'm gonna bring smokers down there and mess up your car," and "If you don't come get me, I'm gonna jump over the counter." Peeples then actually went to the Planned Parenthood clinic, approached the counter, and asked to see the patient. Employees told Peeples to leave. He left the building, but went to his car and waited outside. Employees called 911.

When police arrived, they located Peeples in the front seat of his car and detained him. Under the seat, they could see the butt of a firearm; there was an extended magazine on the driver's seat. Officers later searched the car pursuant to a warrant, and recovered a Polymer 80, 9mm caliber pistol with no serial number,[3] which was loaded with an extended magazine containing 15 rounds of 9mm Luger ammunition. There was also a round in the chamber. The firearm had a dark green frame and gray slide and had a Glock Switch/Autosear attached. Officers also retrieved the extended magazine from the driver's seat, which was unloaded.

///

///

---

[3] The lack of a serial number complicates the proof that the firearm affected interstate commerce. Accordingly, Peeples was charged with unlawful possession of ammunition instead of unlawful possession of a firearm. There is no difference in the sentencing guidelines, and Peeples admitted he possessed the gun. Dkt. 14, ¶ 9(k).

*United States v. Peeples*, CR24-70 KKE
Government's Sentencing Memorandum - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### C. Other Conduct

#### 1. Assault of Girlfriend

After arresting Peeples for the Planned Parenthood incident, the police also spoke with his girlfriend. She had extreme bruising around her left eye and part of her right eye. Her left eye was also bloodshot. She was afraid to leave the clinic until Peeples had been removed from the area by police. Ex. A; *see also* Ex. B, ¶ 47.[4]

Two days after Peeples was arrested for the Planned Parenthood incident, and while he was still in custody, he called his girlfriend. During the call, the two talked about injuries the woman had sustained because Peeples had recently beaten her up. Ex. A, ¶¶ 4–11.

The next day, he called his mother. She was very upset with him for assaulting his girlfriend. She told him that the girlfriend had told her what had happened, and that she had personally seen the girlfriend. His mom told him, "I've seen her, and this is bad. . . . what I've seen yesterday—I mean, the whole body, the whole body. All over her body. I don't even know why you would want your woman looking like that." She also explained, "I've done tried to steer you in the right way, and your response to me was, you loved this life. You told me straight to my face." Ex. A, ¶¶ 12–17.

That call ended, but Peeples called his mother again shortly thereafter. In that call, she continued expressing her horror at what Peeples had done to his girlfriend. She said, "I hear what you are saying, but that still don't give you the right to mangle her like that."

---

[4] Exhibit A is a part of a four-page motion made by the King County Prosecuting Attorney's Office to increase Peeples's bail. The original motion included six exhibits and a proposed order. For Exhibit A, the government has removed exhibits that are irrelevant (e.g., the Information and some booking forms) or duplicative (e.g., King County Certifications for Determination of Probable Cause for conduct that Peeples has admitted in the Plea Agreement), as well as the proposed order. Where this sentencing memorandum refers to paragraph numbers of Exhibit A, it is to paragraphs in Attachment F to the motion, which is included.
  Exhibit B is a five-page excerpt from the lead detective's report regarding the Planned Parenthood incident. The girlfriend's name is redacted to "K," and a photo of her is largely redacted so she is not easily identifiable; the photo shows bruising on her face. Other individual's names and some additional information are also redacted.

*United States v. Peeples*, CR24-70 KKE
Government's Sentencing Memorandum - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

His mother went on to explain that the girlfriend was so injured that she was unable to cover it with makeup.

> She can't even hide it anymore. It ain't no, it ain't no kinda good make-up on this earth that would do her justice unless she's going in for a horror movie. . . . There's no Maybelline . . . she would have to come out with a, a whole brand-new line of motherfucking make-up called Abuse.

Ex. A, ¶¶ 13–22.

### 2. Attempted Obstruction of Justice

A couple of months after his October arrest, Peeples was still in custody at the King County Jail. He continued speaking to his girlfriend. In some of those calls, he pressured her to destroy evidence and to take responsibility for the gun in his car at the Planned Parenthood. For instance, on December 11, 2023, Peeples told his girlfriend to log into his iCloud account and change his password—suggesting that investigators might access the account—and also instructed her to delete all of his photos. Ex. B, ¶ 41. He made a similar call, requesting the same thing, on January 2, 2024. Ex. B, ¶ 55.

On December 12, 2023, Peeples spoke with his girlfriend again. She asked him if it would be helpful for her to write a letter and claim everything in the car was hers. Peeples's mother, who was on the three-way call, told them to stop talking like that on the phone. Ex. B, ¶ 43.

In two conversations on December 28, 2023, one via phone and one via video call, Peeples tried to convince his girlfriend to take responsibility for his crimes. In the phone call, he said something about the girlfriend writing a letter to the prosecutor; she responded indicating her understanding that she should tell the prosecutor that she lied. In the video call, he again talked about writing a letter. When the girlfriend expressed confusion, Peeples told her not to talk about it during the call. When she asked what that would mean for her, Peeples said that she had no criminal history, so it would just be a

*United States v. Peeples*, CR24-70 KKE
Government's Sentencing Memorandum - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

blemish. The girlfriend responded, "That's fine I'll just do the jail time for you it's fine. That's what it's sounding like." Ex. B, ¶ 50, 53.

### III.   SENTENCING GUIDELINES RANGE

The government does not dispute the guidelines calculations set forth in U.S. Probation's Presentence Investigation Report. With a total offense level of 27 and a criminal history category of III, the guidelines range is 87 to 108 months.

### IV.   SENTENCING RECOMMENDATION

As this Court is aware, it is to consider both the guideline range and the factors set forth in Title 18, United States Code, section 3553, in fashioning a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed training, care, or treatment. This Court is also to consider the nature and circumstances of the offense, the history and characteristics of the offender, the kinds of sentences available, the policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the defendant's crimes. Considering all of these factors, the United States respectfully asks this Court to impose a total sentence of imprisonment of 87 months in custody on each count, to run concurrently to each other and to any sentence imposed in King County Superior Court cause number 23-1-00671-9.

First, both of Peeples's offenses were serious. In neither case did he merely possess a firearm. Instead, in February, he shot at a person twice, hitting him in the knee. In the second—while he was on bond from King County Superior Court due to the shooting—he threatened his girlfriend, again armed himself with a gun, drove with the

*United States v. Peeples*, CR24-70 KKE
Government's Sentencing Memorandum - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

gun to where he believed her to be, and tried to enter the medical facility there. Thus, both times that he had a gun, Peeples used or was prepared to use it.

Of course, Peeples's total offense level was increased by four for using these firearms in connection with a felony. But that increase would have also been four levels if he had possessed the gun in connection with much less violent acts. The facts in this case are egregious, and a single four-level increase for the two incidents does not sufficiently reflect the violence involved.

Moreover, Peeples was prohibited from possessing firearms, and there is strong evidence that he was also physically abusing his girlfriend. This history of domestic violence makes his ready access to firearms particularly serious. According to the King County Regional Domestic Violence Firearms Enforcement Unit:

> Firearms in the hands of domestic violence (DV) offenders are a deadly combination. This danger extends beyond survivors and families. These firearms pose risks to law enforcement, the community, and offenders themselves.
> In Washington State, firearms are used in domestic violence homicides more often than all other weapons combined. A 2013-2014 study shows 54% of these perpetrators were already not allowed to own firearms under Washington State law.
> Research shows the risk of homicide for women increases by 500% when a firearm is present in a domestic violence situation. The risk is highest when she is trying to end the relationship.

*Regional Domestic Violence Firearms Enforcement Unit*, https://kingcounty.gov/depts/prosecutor/ellies-place/rdvfeu.aspx (last visited July 19, 2024). Thus, Peeples shot at others, rearmed himself while charged with assault with a deadly weapon, threatened his girlfriend, and posed an extreme risk of more violence to the community at large as well as those close to him.

Second, Peeples is just shy of 22 years old. Despite his youth, he began committing crimes more than nine years ago. Although he started small—

*United States v. Peeples*, CR24-70 KKE
Government's Sentencing Memorandum - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

misdemeanor theft, escape, and resisting arrest, PSR ¶ 35—his criminality quickly grew and became violent. He assaulted health care workers. PSR ¶ 36. He destroyed property. PSR ¶ 37. He got a gun, and intended to use that gun to commit a serious robbery. PSR ¶ 38. While on probation for that offense, he violated the terms of supervision and was returned to custody for a lengthy period. *Id.* He committed another assault. PSR ¶ 39. Then he turned 16, and graduated to even more serious crimes. PSR ¶ 41. He rearmed himself, went to a massage parlor, demanded sexual services and, when denied, assaulted the massage therapist with the gun, removed her clothes, sexually assaulted her, robbed her, and threatened to kill her. *Id.* The juvenile court imposed an unusually long sentence: six years. *Id.* Merely a year later, while still in custody, Peeples participated in a prison riot. PSR ¶ 42. And then he assaulted yet another person. PSR ¶ 43. When he wasn't in custody, he chose to associate himself with gangs. PSR ¶¶ 38, 65, 80.

      As discussed above, this violence has continued unabated since his release from custody, including shooting a "brother," assaulting his girlfriend, threatening her, and again arming himself with guns.

      Despite this frankly terrifying history, he has a criminal history score of only five, due to the manner in which juvenile convictions are scored—they count as fewer points, and wash out more quickly, than adult convictions do. While the guidelines intentionally treat juvenile offenses less seriously than adult offenses in the calculation of the ultimate guideline range, the number and nature of Peeples's prior offenses should weigh heavily in the Court's evaluation of his future dangerousness. Adjudication in juvenile court is designed to provide rehabilitation. Despite Peeples's nine trips through the juvenile court system, encompassing some 14 offenses, he is far from rehabilitated—raising the question of whether rehabilitation is even possible here.

*United States v. Peeples*, CR24-70 KKE
Government's Sentencing Memorandum - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Peeples will undoubtedly point to his difficult upbringing as the reason for his conduct. The government acknowledges Peeples's childhood was marred with child abuse, addiction, and other challenges. These may be an explanation, but they are far from an excuse. Numerous individuals have extremely difficult childhoods and do not shoot at or threaten other people with guns. And this history is not changeable, yet he has taken no steps to overcome it, nor does he appear to have a plan to do so. As his grandfather has noted, Peeples had access to a job, is able to earn enough to support himself in his own residence, and has had opportunities to remove himself from his criminal lifestyle. PSR ¶ 68, 77. He has not taken advantage of these opportunities. Incarceration appears to be the only solution available to adequately protect the public.

## V.　　CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court impose a sentence of 87 months of incarceration for each count, to run concurrently to each other and to any sentence imposed in King County Superior Court cause number 23-1-00671-9. The government also recommends that this Court impose three years of supervised release, along with all of the conditions proposed by U.S. Probation.

DATED this 19th day of July, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*/s/ Erin H. Becker*
ERIN H. BECKER
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:　(206) 553-2905
Fax:　　　　(206) 553-0882
E-mail:　　　Erin.Becker@usdoj.gov

*United States v. Peeples*, CR24-70 KKE
Government's Sentencing Memorandum - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970